**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

MARCUS A. MURPHY,

       *Plaintiff,*

  v.

DOUGLAS "DOUG" L. LAMBORN, in his
official capacity,

       *Defendant.*

Case No. 1:21-cv-00071

**MOTION TO DISMISS OF
DEFENDANT THE HONORABLE DOUGLAS LAMBORN**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant the Honorable Douglas Lamborn, U.S. Representative for the 5th Congressional District of Colorado, respectfully moves for an order dismissing Plaintiff Marcus A. Murphy's claims against him as set forth in the Complaint.  (Jan. 11, 2021) (ECF No. 1) ("Complaint").  For the reasons set forth in the accompanying Memorandum of Points and Authorities, the Complaint should be dismissed with prejudice.

Pursuant to Civ. Practice Standard IV.N.2.a, Counsel for Congressman Lamborn reached out, via email, to Mr. Murphy in an effort to resolve the issues set forth in Defendant's Motion to Dismiss.  Mr. Murphy did not respond.  Counsel for Congressman Lamborn believes that the jurisdictional and substantive issues cannot be remedied by an Amended Complaint, and, accordingly, files this Motion to Dismiss and accompanying Memorandum.

A proposed order is attached, and oral argument is not requested.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

Plaintiff Marcus A. Murphy seeks declaratory and injunctive relief arising from the alleged conduct of the Honorable Douglas Lamborn, U.S. Representative for the 5th Congressional District of Colorado.  *See* Compl. (ECF No. 1).  For the reasons set forth below, the Complaint against Congressman Lamborn must be dismissed because this Court lacks subject matter jurisdiction and Mr. Murphy fails to state a claim upon which relief can be granted.

## BACKGROUND

## I.      THE APPLICABLE CONSTITUTIONAL AND STATUTORY PROVISIONS

Every four years, voters nationwide cast their ballots in a Presidential election.  *See* U.S. Const., Art. II, § 1, cl. 3; 3 U.S.C. § 1.  The Constitution provides that the States are to appoint electors, who are, in turn, empowered to elect the President and Vice President.  U.S. Const., Art. II, § 1, cl. 2; U.S. Const. Amend. XII.  The Twelfth Amendment requires that electors "meet in their respective states," cast ballots for President and Vice President, "sign and certify" their votes, and transmit the results "sealed to the seat of government of the United States, directed to the President of the Senate."  U.S. Const. Amend. XII.  The Amendment further provides that "[t]he President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."  *Id.*

Consistent with these constitutional requirements, in 1887, Congress established the process to carry out its Twelfth Amendment responsibilities of casting and counting electoral votes.  *See generally* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 Fla. L. Rev. 541, 551-53 (2004) (describing historical understanding of electoral vote counting).  For more than 130 years, the Electoral Count Act, as

1

revised and in conjunction with other statutes, has established procedures by which electoral

votes must be cast and counted, culminating with the final count in the Joint Session of

Congress.  *See* 3 U.S.C. §§ 5-8, 15.  The procedures established by the Electoral Count Act have

governed in every election since its enactment.  *See* Cong. Rsch. Serv., RL32717, Counting

Electoral Votes: An Overview of Procedures at the Joint Session, Including Objections by

Members of Congress (Dec. 8, 2020), https://perma.cc/8TS3-8873.

The Electoral Count Act provides that during the Joint Session, the President of the

Senate will open and present the vote certificates to the House and Senate for counting.  *Id.* § 15.

During the Joint Session, Members of Congress have the opportunity to express objections.  *Id.*

As Representative for the 5th Congressional District of Colorado, Congressman Lamborn, acting

in his official capacity, participated in the Joint Session of Congress to certify the results of the

2020 election, held on January 6, 2021.  *See* Final Vote Results, https://perma.cc/2JUH-J3LJ.

## II.    MR. MURPHY'S SUIT

On January 11, 2021, Plaintiff Marcus A. Murphy filed a Complaint seeking relief for

various injuries allegedly related to Congressman Lamborn's votes during the January 6 Joint

Session.  Mr. Murphy's Complaint includes eight counts, all of which contain the same

allegations and requests for relief and arise out of the same alleged conduct.  *See generally*,

Compl.  The first four counts of the Complaint allege that Congressman Lamborn's conduct

during the Joint Session violated the First, Fourth, Fifth, and Fourteenth Amendments of the U.S.

Constitution, creating an "unconstitutional-abridgement of Plaintiff-Murphy's Constitutional-

Rights."  Compl. ¶ 1.  Next, the Complaint includes three counts that assert various jurisdictional

statutes (28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 28 U.S.C. § 1355(a)) provide bases for Mr.

Murphy's claims.  The final count attempts to state a claim under 42 U.S.C. § 1983.

Mr. Murphy specifically alleges that Congressman Lamborn "[r]efused to accept the certified election-results of Arizona & Pennsylvania for President," "[v]oted against accepting the certified election-results of Arizona & Pennsylvania for President," "[d]enied the Right to Vote to citizens/residents of Arizona & Pennsylvania," "[v]iolated the Security of the People's House under color of federal-law," "[d]enied Due-Process of the law by refusing to accept certified, popular-vote election-results of a Presidential-Election according to Colorado, as well as Arizona & Pennsylvania State-law," and "[d]enied Equal-Protection of the laws to both the People of Arizona & Pennsylvania, and Joe Biden." Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31.

Mr. Murphy seeks only declaratory and injunctive relief. Specifically, he asks the Court to declare that Congressman Lamborn "lacks both the eligibility and power to remain in office," and further requests that this Court "direct[] the U.S. House of Representative for Colorado's Fifth-District to Cease & Desist from continuing to be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any state." Compl. ¶¶ 11, 14, 17, 20, 23, 26, 29, 32 (internal quotation marks omitted). For the reasons set forth below, the Complaint should be dismissed.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) compels dismissal of this case for two reasons. *First*, Mr. Murphy lacks Article III standing to bring this action. *Second*, Mr. Murphy's claims are barred by the Speech or Debate Clause of the U.S. Constitution. Additionally, the Complaint must also be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction and they may exercise jurisdiction only when specifically authorized to do so." *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D.

Colo. 2001).  As a result, courts have "an independent obligation to ensure that they do not exceed the scope of their jurisdiction."  *Quintana Casillas v. Sessions*, No. 17-01039, 2017 WL 3088, at *8 (D. Colo. July 20, 2017) (citation omitted).  "Rule 12(b)(1) empowers a court to dismiss a complaint for 'lack of subject matter jurisdiction.'"  *United Fin. Cas. Co. v. Lapp*, No. 12–cv–00432, 2012 WL 7800838, at *3 (D. Colo. Oct. 12, 2012) (quoting Fed. R. Civ. P. 12(b)(1)).  When a motion to dismiss pursuant to Rule 12(b)(1) challenges the facial sufficiency of a complaint—as it does here—the "court must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  However, the motion "must be determined … without regard to mere conclusory allegations of jurisdiction."  *Miller v. Exec. Dir. of CDOC*, No. 20-cv-02321, 2021 WL 1409550, at *2 (D. Colo. Mar. 24, 2021) (citation omitted).  A plaintiff bears the burden of establishing subject matter jurisdiction.  *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In ruling on a motion to dismiss under Rule 12(b)(6), this Court must determine whether Mr. Murphy has pleaded "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## I.      THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

The Court lacks subject-matter jurisdiction over this action for two independently dispositive reasons.  *First*, Mr. Murphy does not have Article III standing to bring this suit because he has not alleged any particularized stake in the underlying facts.  *Second*, the Speech

or Debate Clause absolutely immunizes Congressman Lamborn from any claims challenging

votes taken during the Joint Session of Congress.  For either of these reasons, this Court should

dismiss the Complaint pursuant to Rule 12(b)(1).

### A.  Mr. Murphy Lacks Article III Standing

To establish standing, Mr. Murphy "must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation

omitted).  The "plaintiff must demonstrate standing for each claim he seeks to press,"

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and as "the party invoking federal

jurisdiction, bears the burden of establishing these elements," *Spokeo* at 1547.  The "threshold

issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of

Article III,'" and must be met for a court's jurisdiction to vest.  *Horne v. Flores*, 557 U.S. 433,

445 (2009) (citation omitted).  Mr. Murphy has failed to establish each of these requisite

elements because he has failed to establish a particularized stake in this litigation.  Rather, Mr.

Murphy presents only a generalized grievance, which is insufficient to establish standing.  *See

Lance v. Coffman*, 549 U.S. 437, 442 (2007).

#### 1.  *Mr. Murphy Has Not Suffered an Injury in Fact*

Injury in fact is the "'[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S.

Ct. at 1547 (citation omitted).  "To establish injury in fact, a plaintiff must show that he or she

suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citation omitted).  A

"concrete" injury must be "real" and not "abstract," while a "particularized" injury "must affect

the plaintiff in a personal and individual way." *Id.*  To satisfy this requirement, a "plaintiff

generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

An exception to this rule, the doctrine of third-party standing, can allow a plaintiff to assert the rights of others not before the court. *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). To qualify for this exception, in addition to showing an injury in fact, the plaintiff "must show that 'the party asserting the right has a "close" relationship with the person who possesses the right'" and that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006) (citation omitted).

The Complaint alleges four constitutional violations, three violations of jurisdictional statutes, and a violation of 42 U.S.C. § 1983. *See* Compl. Mr. Murphy has failed to plead sufficient facts to support either an injury in fact or that he has a qualifying relationship to bring suit on behalf of any third party discussed in any of the eight counts of his Complaint.

With respect to the First Amendment, Mr. Murphy asserts that "[t]he electors for President, including the electors of Colorado's Fifth Congressional District, as well as the electors of Arizona & Pennsylvania, who voted for Joe Biden were prohibited from exercising their association & assembly rights[.]" Compl. ¶ 9. The Complaint states that Mr. Murphy's "personal Constitutional-Right to vote … for President, gives him standing to make the Right to Vote argument." Compl. ¶ 8. However, Mr. Murphy fails to allege any actual injury or impairment to his right to vote that would give rise to standing. Similarly, Mr. Murphy fails to demonstrate that he has any relationship, much less a "close" relationship, with citizens of Arizona or Pennsylvania and neglects to establish any "hindrance" to their ability to protect their own interests. Thus, the doctrine of third-party standing is also unavailable to Mr. Murphy.

Mr. Murphy's allegations that Congressman Lamborn "[r]efused to accept the certified election-results of Arizona & Pennsylvania for President" and "[v]oted against accepting the certified election-results of Arizona & Pennsylvania for President," Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31, do not reasonably allege a deprivation of any right related to the First Amendment or his vote.  Simply put, there can be no injury in fact here because the very outcome Mr. Murphy sought came to pass when Congress confirmed the electoral victory of President Biden during the Joint Session.  167 Cong. Rec. D23 (daily ed. Jan. 6, 2021).

Regarding the Fourth Amendment, Mr. Murphy merely alleges that "the right to be secure in the People's House" was violated.  Compl. ¶ 12.  This allegation is insufficient to establish injury in fact.  "The Fourth Amendment protects citizens from 'unreasonable searches and seizures' conducted by either state or federal government officials."  *United States v. White*, 584 F.3d 935, 944 (10th Cir. 2009) (quoting U.S. Const. Amend. IV).  "[T]he key inquiry under the 4th Amendment is whether the Plaintiff's legitimate expectations of privacy were somehow exceeded."  *Murphy v. Gardner*, 413 F. Supp. 2d 1156, 1168 (D. Colo. 2006).  "Fourth Amendment rights are personal rights that may not be asserted vicariously."  *United States v. Paetsch*, 782 F.3d 1162, 1173 (10th Cir. 2015) (citation omitted).  Mr. Murphy does not allege that he was physically present at the Capitol on January 6, that he was subject to any form of search or seizure by federal officials at any time, or that he had any legitimate expectation of privacy that was violated.  Thus, Mr. Murphy fails to plead any cognizable injury under the Fourth Amendment.

Next, Mr. Murphy claims this matter "involves violation of a fundamental-part of the Fifth-Amendment: the right of due process of law."  Compl. ¶ 15.  The Complaint further alleges that Congressman Lamborn "[d]enied Due-Process of the law by refusing to accept certified,

popular-vote election-results of a Presidential-Election according to Colorado, as well as Arizona & Pennsylvania State-law." Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31. Mr. Murphy, however, has not alleged any issues with the casting or counting of his vote, nor has he pled any facts to indicate that he was personally deprived of any corresponding due process. As a result, Mr. Murphy fails to establish that he suffered any injury in fact arising out of this claim.

As to the Fourteenth Amendment, Mr. Murphy alleges that Congressman Lamborn "[d]enied Equal-Protection of the laws to both the People of Arizona & Pennsylvania, and Joe Biden." Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31. Here, Mr. Murphy again only alleges that the rights of third parties have been violated and fails to establish the elements necessary to make such claims on their behalf. Mr. Murphy makes no attempt to show that he has the required "close" relationship with citizens of Arizona or Pennsylvania or with President Biden. He also fails to establish that there would be a "hindrance" to these individuals' ability to protect their own interests, if in fact they suffered an injury.

In addition to the constitutional claims, Mr. Murphy's Complaint includes three counts alleging violations of three jurisdictional statutes: 28 U.S.C. § 1331; 28 U.S.C. § 1343(a); and 28 U.S.C. § 1355(a). These jurisdictional statutes cannot independently support standing because they do not create private rights of action but rather establish when federal district courts have subject matter jurisdiction for certain claims. *See, e.g.*, *Haw. Disability Rights Ctr. v. Cheung*, 513 F. Supp. 2d 1185, 1190 (D. Haw. 2007) ("28 U.S.C. § 1331 does not alone serve as a basis for federal jurisdiction, absent a federal statute creating such a right of action in federal court."); *Albra v. City of Fort Lauderdale*, 2007 WL 1213230, at *6 (11th Cir. 2007) ("28 U.S.C. § 1343 does not create a private right of action[.]"); *Agarwal v. United States*, No. 18-cv-03125, 2019 WL 2476613, at *2 (D.D.C. June 13, 2019) (Jurisdiction under section 1355(a) "extends only to

suits by a public officer to recover a sum of money that will be paid into the public treasury.").

Mr. Murphy cannot independently claim any injury in fact arising under these purely

jurisdictional statutes.

Finally, Count VIII of the Complaint attempts to assert a claim under 42 U.S.C. § 1983,

which "provides a federal civil remedy for the 'deprivation of any rights, privileges, or

immunities secured by the Constitution' by any person acting under color of state law."

*McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011) (quoting 42 U.S.C. § 1983).  For the

reasons explained above, the Complaint fails to establish any injury to Mr. Murphy's

constitutional rights.  Further, it is well established that Section 1983 does not authorize claims

against federal officials.  *See Yang v. Mayorkas*, No. 20-cv-01806, 2021 WL 1200682, at *5 (D.

Colo. Feb. 25, 2021) ("[Section 1983] does not, however, authorize redress against federal

officials who act under federal law.") (citation omitted).

### 2.  *Mr. Murphy Has Not Alleged Sufficient Facts to Support Causation*

Standing also requires that Mr. Murphy demonstrate "a fairly traceable connection

between the … injury and the complained-of conduct of the defendant."  *Steel Co. v. Citizens for

a Better Env't*, 523 U.S. 83, 103 (1998).  Although the plaintiff need not demonstrate that the

defendant's actions were the proximate cause of the plaintiff's harm, "Article III does 'require

proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'"

*Hackbecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) (citation

omitted).

Here, Mr. Murphy alleges that Congressman Lamborn's "continuing-service prevents the

People of Colorado's Fifth-District, including Plaintiff-Murphy, and the People of Arizona &

Pennsylvania, from exercising their core political-speech, associational, and assembly rights

guaranteed under the First-Amendment," specifically "by electing Joe Biden as the 46th

President of the United States." Compl. ¶ 9. Mr. Murphy fails to explain how actions allegedly taken by Congressman Lamborn during the Joint Session of Congress prevented Mr. Murphy or any other voters from exercising their First Amendment rights in voting in the 2020 presidential election. Mr. Murphy asserts no facts indicating that any action taken by Congressman Lamborn prevented Mr. Murphy from voting at all, or specifically, voting for President Biden.

### 3.  Mr. Murphy Has Not Demonstrated Redressability

Finally, Mr. Murphy must also show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (quotation marks omitted). In addition, "the plaintiff must demonstrate that a favorable judgment would have a binding legal effect." *WildEarth Guardians v. Public Service Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (citation omitted). Here, even if Mr. Murphy had adequately alleged that the injuries he claims are traceable to Congressman Lamborn—which he has not—he has failed to demonstrate how these supposed injuries would be "redressed by a favorable decision" against the Congressman.

Mr. Murphy's Complaint seeks a declaration from this Court that Congressman Lamborn "lacks both the eligibility and power to remain in office," and an order "direct[ing] the U.S. House of Representative for Colorado's Fifth-District to Cease & Desist from continuing to be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any state." Compl. ¶¶ 11, 14, 17, 20, 23, 26, 29, 32 (internal quotation marks omitted). In other words, Mr. Murphy is effectively seeking to have this Court remove Congressman Lamborn from his current position as the duly elected Representative for the 5th Congressional District of Colorado and prevent him from holding public office in perpetuity. This type of relief violates the separation of powers doctrine, which precludes "the judicial [branch from] prescrib[ing] to the legislative department of the

government limitations upon the exercise of its acknowledged powers." *McCray v. United States*, 195 U.S. 27, 57 (1904).

The U.S. Constitution expressly and exclusively authorizes the House of Representatives to "punish" or "expel" Members. U.S. Const. Art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behavior, and, with the Concurrence of two thirds, expel a Member."). Simply put, Mr. Murphy seeks relief that is beyond the power of this Court to provide. *See Orta Rivera v. Congress*, 338 F. Supp. 2d 272, 279 (D.P.R. 2004) ("This Court has no authority to order Congress to take action on matters specifically delegated to Congress by the Constitution.").

Other than via expulsion as codified in Article I, § 5, cl. 2 or being voted out of office, a Member of Congress may not be forced to vacate his or her position. *See Burton v. United States*, 202 U.S. 344, 369 (1906) ("The seat into which he was originally inducted as a Senator … could only become vacant by his death, or by expiration of his term of office, or by some direct action on the part of the Senate in the exercise of its constitutional powers."). As Mr. Murphy notes, elections provide voters with an effective way to express their satisfaction or dissatisfaction with their elected representatives. Compl. ¶ 15  ("The People's bi-annual election of its federal-officials is the ultimate-expression of Justice, in order to account for these honorable-men who rule."). Mr. Murphy seeks to inflict on the voters of the 5th Congressional District of Colorado, via an order from this Court, the very type of attempted electoral disenfranchisement he complains of himself. *See Powell v. McCormack*, 395 U.S. 486, 547 (1969) ("A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.'"). This Court should reject such an invitation.

Accordingly, because Mr. Murphy fails to establish each element of standing, the Complaint must be dismissed.

**B. Mr. Murphy's Claims Are, In Any Event, Independently Precluded by the Speech or Debate Clause**

The Speech or Debate Clause, U.S. Const., Art. I, § 6, cl. 1, provides absolute immunity for Congress and its Members for any claims predicated on legislative activities. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). This absolute immunity extends to all civil actions. *Id.* at 503. It protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). Accordingly, "[t]he Speech or Debate Clause operates as a jurisdictional bar" to this action. *Rockefeller v. Bingaman*, 234 F. Appx. 852, 856 (10th Cir. 2007); *see also Howard v. Off. of the Chief Admin. Officer*, 720 F.3d 939, 941 (D.C. Cir. 2013).

The Clause applies not only to traditional "legislative acts," such as speaking on the House floor or casting votes on pending legislation, but also to all other activities that fall "within the 'legislative sphere.'" *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (citation omitted). The "legislative sphere" is broadly construed to include all activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings … [and] with respect to … matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). When it is determined that "Members are acting within the legitimate legislative sphere[,] the Speech or Debate Clause is an absolute bar to interference," *Eastland*, 421 U.S. at 503 (quotation marks omitted), and is applied "broadly to effectuate its purposes." *Id.* at 501. "[T]he words 'Speech or Debate' have been read broadly to encompass all formal actions in the official business of Congress, including *voting*, conducting hearings, issuing reports, and issuing subpoenas."

*Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1314 (10th Cir. 2004) (emphasis added); *Gravel*, 408 U.S. at 617 (under the Clause, "[c]ommittee reports, resolutions, *and the act of voting are equally covered*") (emphasis added).

Mr. Murphy challenges Congressman Lamborn's actions during the certification of electoral votes, a process the Constitution expressly assigns to Congress.  *See* U.S. Const. Amend. XII.  The Speech or Debate Clause precludes any suit against Congressman Lamborn arising from his votes or other conduct at the January 6 Joint Session, as that activity unquestionably is "within the 'legitimate legislative sphere.'"  *Eastland*, 421 U.S. at 503. Accordingly, the Speech or Debate Clause "provides an absolute immunity from judicial interference" of the type Mr. Murphy has requested.  *Eastland*, 421 U.S. at 509 n.16.

Mr. Murphy also dubiously implies that Congressman Lamborn's alleged conduct during the Joint Session was "unconstitutional."  Compl. ¶ 33.  Even if those allegations were creditable—which they are not—the protections of the Clause are not abrogated by allegations that a Member acted unconstitutionally.  *See, e.g.*, *McMillan*, 412 U.S. at 312-13 (Clause applies to all legislative activities "even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"); *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) ("An act does not lose its legislative character simply because a plaintiff alleges that it violated House Rules or even the Constitution.") (citations omitted).  Rather, the proper inquiry for courts is to assess the "nature of the act" to determine "whether, stripped of all considerations of intent and motive, [the challenged] actions were legislative."  *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998). "[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference."  *Eastland*, 421 U.S. at 503 (citation

omitted).  "Such is the nature of absolute immunity, which is—in a word—absolute."  *Rangel*, 785 F.3d at 24.

Accordingly, because the Congressman's statements and votes during the Joint Session fall "within the 'legitimate legislative sphere[,]' the Speech or Debate Clause is an absolute bar to" any claims against Congressman Lamborn over those activities.  *Eastland*, 421 U.S. at 503.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if Mr. Murphy manages to surmount the high jurisdictional hurdles here, he nonetheless fails to state legally actionable claims under the First, Fourth, Fifth, or Fourteenth Amendments, or the statutes he has cited.  Accordingly, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.  The Complaint Fails to State a Claim for Violation of the First Amendment

Mr. Murphy fails to state a viable claim under the First Amendment.  *See* Compl. ¶¶ 9-11.  For Mr. Murphy to succeed on his First Amendment claim, he must prove that wrongful conduct by Congressman Lamborn had a chilling effect on Mr. Murphy's organizational activities and associational rights.  *See National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1531 n.4 (10th Cir. 1994).

Although Mr. Murphy alleges that Congressman Lamborn's continued presence in office prevents various individuals, including himself, from exercising their rights under the First Amendment, Compl ¶ 9, he fails to allege any specific wrongful conduct by Congressman Lamborn.  For the reasons covered above, Congressman Lamborn's actions during the Joint Session are immune from Mr. Murphy's suit.  Similarly, Mr. Murphy has failed to plead any chilling effect on his exercise of political speech.  At most, Mr. Murphy alleges that Congressman Lamborn "[r]efused to accept the certified election-results of Arizona &

Pennsylvania for President" and "[v]oted against accepting the certified election-results of Arizona & Pennsylvania for President," Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31, but in fact, raising objections during this type of Joint Session is specifically permitted by the Electoral Count Act. 3 U.S.C. § 15. Here, the Complaint only challenges actions taken by Congressman Lamborn as part of his duties as a Member of Congress, which are also specifically permitted by federal statute. As a result, Mr. Murphy does not allege sufficient facts to reasonably plead a violation of the First Amendment.

**B. The Complaint Fails to State a Claim for Violation of the Fourth Amendment**

Mr. Murphy also fails to state a viable claim under the Fourth Amendment. *See* Compl. ¶¶ 12-14. In Count II, Mr. Murphy alleges that Congressman Lamborn's alleged conduct resulted in a violation of "the right to be secure in the People's House." Compl. ¶ 12. "[T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984). Mr. Murphy fails to plead facts necessary to show that he has a "constitutionally protected" reasonable expectation of privacy in the "People's House." Further, Mr. Murphy neglects to allege that he was subject to any specific, unreasonable search or seizure that resulted from Congressman Lamborn's alleged conduct.

**C. The Complaint Fails to State a Claim for Violation of the Fifth Amendment**

In Count III, Mr. Murphy alleges that Congressman Lamborn's conduct amounted to a violation of the Fifth Amendment. Compl. ¶ 15. Mr. Murphy asserts that "by refusing to accept certified, popular-vote election-results of a Presidential-Election according to Colorado, as well as Arizona & Pennsylvania State-law," Congressman Lamborn "[d]enied Due-Process of the law." Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31. The concept of due process encompasses a procedural and a substantive element. Whether an individual was provided with procedural due

process is a two-step inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Roska v. Sneddon*, 366. Fed. Appx. 930, 934 (10th Cir. 2010) (citation omitted).  Substantive due process, by comparison, "protects certain 'fundamental liberty interests' from deprivation by the government, *regardless* of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (citation omitted).  "To succeed on such a claim, an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019).  Mr. Murphy pleads no facts to support a procedural due process claim and the Complaint does not allege that Mr. Murphy has been deprived of any protected liberty or property interest.  The Complaint merely includes the text of the Fifth Amendment and the conclusory statement that "the case involves a violation of … the right of due process of law."  Compl. ¶ 15.

### D.  The Complaint Fails to State a Claim for Violation of the Fourteenth Amendment

In Count IV, Mr. Murphy alleges that Congressman Lamborn violated a "fundamental-part of the Fourteenth-Amendment: the right of equal-protection of the laws."  Compl. ¶ 18. This claim is based entirely on the vague assertion that Congressman Lamborn "[d]enied Equal-Protection of the laws to both the People of Arizona & Pennsylvania, and Joe Biden."  Compl. ¶¶ 10, 13, 16, 19, 22, 25, 28, 31.  The Fourteenth Amendment guarantees "that all persons similarly situated should be treated alike."  *Vigil v. Raemisch*, No. 13–cv–2042, 2014 WL 4417719, at *6 (D. Colo. 2014).  To assert an actionable equal protection claim, a plaintiff must "make a threshold showing that [he was] treated differently from others who were similarly situated to [him]."  *Id.* (citation omitted).  Mr. Murphy has made no such showing here.  He pleads no facts

to suggest that he was treated differently from any other similarly situated individuals and, thus, his claim cannot survive this threshold inquiry.

Even if Mr. Murphy could make such threshold showing, he has not alleged sufficient facts to survive even the faintest scrutiny. "When considering an equal protection claim, the Court applies a rational basis test if 'the challenged government action does not implicate either a fundamental right or a protected [or suspect] class.'" *Pecci v. Schapanski*, No. 14–cv–02375, 2014 WL 5395053, at *3 (D. Colo. 2014) (citation omitted). Here, not only is the Complaint devoid of facts alleging that Mr. Murphy was treated differently from a similarly situated party, it fails to cite any facts to indicate that he is a member of a protected class. While the right to vote is a fundamental right, *Dool v. Burke*, 497 Fed. Appx. 782, 786 (10th Cir. 2012) (O'Brien, J., concurring), for the reasons discussed above, *see* discussion *supra* Section II.A, Mr. Murphy has failed to state a viable claim for a violation of the Fourteenth Amendment.

### E.  The Jurisdictional Statutes Cited in the Complaint Do Not Create Private Rights of Action

In addition to Mr. Murphy's constitutional claims, the Complaint includes three counts (Counts V, VI, and VII), stylized as claims, under three jurisdictional statutes: 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 28 U.S.C. § 1355(a). Because these jurisdictional statutes do not independently create private rights of action, Mr. Murphy does not and cannot assert any viable claims arising under these statutes.

The general federal question jurisdiction statute, "28 U.S.C. § 1331, does not alone serve as a basis for federal jurisdiction, absent a federal statute creating such a right of action in federal court." *Haw. Disability Rights Ctr.*, 513 F. Supp. 2d at 1190. Rather, it "is applicable only when the plaintiff sues under a federal statute that creates a right of action in federal court." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1022 (9th Cir. 2007). Mr. Murphy has not and cannot

assert any facts to show how any alleged conduct of Congressman Lamborn could violate this jurisdictional statute.

Similarly, "28 U.S.C. § 1343 serves as the jurisdictional basis for claims under 42 U.S.C. §§ 1983 and 1985." *Prop. Servs. of Atlanta v. Thomas*, No. 1:19-cv-0030, 2019 WL 8953360, at *3 (N.D. Ga. Jan. 7, 2019). The Complaint fails to raise an actionable Section 1983 claim for the reasons discussed below, and only mentions Section 1985 in passing in Count VI. To the extent Mr. Murphy is alleging the existence of a conspiracy, he fails to plead sufficient facts. Finally, 28 U.S.C. § 1343 does not create a private right of action, *see Albra v. City of Fort Lauderdale*, No. 06–14544, 2007 WL 1213230, at *6, and is irrelevant to this proceeding.

Lastly, Mr. Murphy attempts to bring a claim under 28 U.S.C. § 1355(a), which provides that "district courts shall have original jurisdiction … of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress[.]" 28 U.S.C. § 1355(a). Mr. Murphy fails to allege any facts relating to this claim. Furthermore, "28 U.S.C. § 1355(a) bars private parties from filing claims." *Agarwal*, No. 18-cv-03125, 2019 WL 2476613, at *2. Jurisdiction under this statute "extends only to suits by a public officer to recover a sum of money that will be paid into the public treasury." *Id.* (citation omitted). Thus, Mr. Murphy, as a private individual, cannot raise a viable claim on this basis. *See id.*

### F.  The Complaint Fails to State an Actionable Claim Under 42 U.S.C. 1983

Section 1983 permits suit against those acting "under color of any statute, ordinance, regulation, custom, or usage, of any State[.]" 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Acting under color of state law

traditionally "requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (citation omitted).  "Section 1983 has no application to federal officers acting pursuant to federal law." *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).  Because Mr. Murphy has brought this suit against Congressman Lamborn, a Member of Congress, acting in his official capacity pursuant to federal law, this attempt exceeds both the plain language and well recognized application of the statute.  Thus, the Complaint fails to state an actionable claim under 42 U.S.C. § 1983.

In addition to the numerous deficiencies in the Complaint outlined above, Mr. Murphy has failed to plead facts to support any claim against Congressman Lamborn under the First, Fourth, Fifth, or Fourteenth Amendments or under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), 28 U.S.C. § 1355(a), or 42 U.S.C. § 1983.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss should be granted.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER (D.C. Bar No. 253492)
TODD B. TATELMAN (VA Bar No. 66008)
SARAH CLOUSE (MA Bar No. 688187)
BROOKS M. HANNER (D.C. Bar No. 1005346)

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)
douglas.letter@mail.house.gov

June 11, 2021                            *Counsel for Defendant Congressman Lamborn*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2021, I caused the foregoing Motion to Dismiss and accompanying Memorandum of Points and Authorities to be filed via the CM/ECF system for the U.S. District Court for the District of Colorado, which I understand caused service on all registered parties.

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER